Nesbit et al. *v.* Riesenman et al., Appellants.

Argued September 30, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Carl E. Glock,* with him *J. Merrill Wright* and *Reed, Smith, Shaw & McClay,* for appellants.—Under the facts in this case, defendants' business does not come within the rule that a public garage in a residential district is a nuisance per se: Collins v. Iron Works, 227 Pa. 326; Houghton v. Kendrick, 285 Pa. 223; Burke v. Hollinger, 296 Pa. 510; Mitchell v. Guaranty Corporation, 283 Pa. 361; Carney v. Oil Co., 291 Pa. 371; George v. Goodovich, 288 Pa. 48.

The court below, delimiting a very small zone as the district involved, found it to be a "distinctly residential section," and, without looking into additional circumstances, applied the public garage rule, which it quoted from Ladner v. Siegel, 293 Pa. 306, and declared defendants' business to be a nuisance per se.

Enjoining the defendants in this case on the ground that their business is a nuisance per se deprives defendants of their property without due process of law, and is a denial of the equal protection of the laws.

*Quincy D. Hastings,* with him *J. Merrill Wright* and *John L. McBride,* for appellants.—The rule as counsel understands it and as apparently understood by the lower court, implies that a business such as defendants' is a nuisance per se in every district which is residential, and, that being true as a matter of law, the courts of this Commonwealth will not permit individual suitors to show whether or not the business is in fact injurious. That rule is in effect a zoning ordinance having for its purpose the exclusion of public garages, such as defendants', from residential districts, regardless of whether the garage be in fact a nuisance.

Such a rule is without sanction of law; is not the act of the legislature, the only part of our government having legal authority to enact such a rule; and, aside from whether the rule be reasonable or arbitrary, it has no binding force on our courts because this court was without constitutional or statutory power and authority to formulate such a rule as a guiding and determining rule of law.

Neither this court nor our court of common pleas possesses general chancery powers: Hogsett v. Thompson, 258 Pa. 85; Sparhawk v. Ry., 54 Pa. 401; Cumberland R. R. Co.'s App., 62 Pa. 218; Rhymer v. Fretz, 206 Pa. 230.

The right and power to change the common law as to nuisances is with the legislature only, and is not inherent in our courts: Pittsburgh v. Keech Co., 21 Pa. Superior Ct. 548; Albright v. Albright, 228 Pa. 552.

It has always been the rule that courts, both of equity and common law, decide peoples' rights and are not permitted and very seldom attempt to legislate concerning mere questions of policy, local or general: Rhodes v. Dunbar, 57 Pa. 274.

Even the legislature may not arbitrarily say that a lawful business, which is not an infringement on public safety and is not a nuisance in fact destroying rest and peace, or injurious to the health of persons living near. by, is a nuisance as a matter of law, and then arbitrarily prohibit the same: Yates v. Milwaukee, 10 Wall. 497.

The rule of Ladner v. Siegel not only attempts to establish a uniform rule or policy, but further declares that it will not permit experiments in separate instances to determine whether or not there has been wrong done and harm suffered because such litigation might end in frequent disputes. The practical effect of such a rule is to forearm plaintiffs and inform them that all they need to do is to make a complaint and that defendant will not be permitted to show his act is not injurious: Wood v. McGrath, 150 Pa. 451.

It will be noted that in this case practically all of the neighbors have testified as to the harmless nature of defendants' business as the same has been conducted in their midst and this record abundantly shows that this evidence was disregarded because of the lower court's belief that it was bound by the statement of this court that a business, such as defendants', was a nuisance per se in a residential district.

A nuisance per se, as relating to private persons, is an act or use of property of a continuing nature offensive and legally injurious to health and property or both.

*A. R. Osmer*, with him *N. F. Osmer*, for appellee.— That the district is in fact clearly residential is abundantly proven: Hamilton v. Bates, 284 Pa. 513; Krocker v. Mill Co., 274 Pa. 143; Mitchell v. Guaranty Corp., 283 Pa. 361; Tyson v. Coder, 83 Pa. Superior Ct. 116.

A chancellor's findings are as conclusive as verdict of jury: Houghton v. Kendrick, 285 Pa. 223; Gordon v. Pettey, 291 Pa. 258; Ladner v. Siegel, 293 Pa. 306.

That neither the findings of fact, nor the conclusions and decisions of the court below, nor the numerous decisions of this court, holding the operation of a public garage in a residential district of a city to be a nuisance per se, warrant the allegation of counsel that this constitutes an "arbitrary and an unwarranted attempt" at legislation on the part of this court, is so conclusively answered by the numerous opinions of this court, in similar cases, as to render further discussion wholly unnecessary. See especially: Burke v. Hollinger, 296 Pa. 510; Ladner v. Siegel, 293 Pa. 306; Prendergast v. Walls, 257 Pa. 547; Hohl v. Modell, 264 Pa. 516; Mitchell v. Guaranty Corp., 283 Pa. 361; Unger v. Edgewood Garage, 287 Pa. 14.

This injunction is not in conflict with the 14th Amendment of federal Constitution: Phillips v. Donaldson, 269 Pa. 244; Mitchell v. Guaranty Corp., 283 Pa. 361; Penna. Co. for Ins. on Lives v. Sun Co., 290 Pa. 404;

Ladner v. Siegel, 293 Pa. 306; Zahn v. Los Angeles, 274 U. S. 325; Euclid v. Ambler Co., 272 U. S. 365; Junge's App., 89 Pa. Superior Ct. 548; Reinman v. Little Rock, 237 U. S. 171.

OPINION BY MR. JUSTICE KEPHART, January 6, 1930:

Appellant's major question is that this court did not possess the power under the Constitution and the law to announce the rule in Ladner v. Siegel, 293 Pa. 306, that the "intended use [of a building as a public garage in a residential district] is a nuisance per se;......, and to permit experiments in separate instances to determine the extent of the harm suffered will lead to endless disputes"; and that the application of the rule violates the 14th Amendment to the federal Constitution in that it deprives defendants of their property without due process of law and denies to them equal protection of the law.

Counsel evidently misunderstands the effect of our decisions in relation to nuisances, as they embrace a very limited subject,—buildings for the storage of a large number of cars used generally for pleasure or commercial purposes. Had we announced, without a foundation on which to base it, that public garages in residential districts would be prohibited as nuisances per se, defendant might question our power, but the court did not proceed on that theory.

When automobiles came into use extensively, and complaints were brought to this court as to the occupation of buildings for storage in residential locations, we said that an owner has a right to any use of his property, barring malice and negligence, unless by its continuance he prevents his neighbors from enjoying the use of their property; that a public garage business was lawful and would not be a nuisance in anticipation unless its conduct in certain localities or surroundings was known generally to result in injury to property, health or safety, regardless of how carefully it was conducted.

482

See Burke v. Hollinger, 296 Pa. 510, 516, and Ladner v. Siegel (No. 1), 293 Pa. 306. It was held, from a review of the earlier decisions, that the use of a building as a "public" garage was inseparable from noise, odor, danger, pounding metal, testing engines, speeding motors, smoke, vapors from gas, danger to school children and pedestrians in the highways, and it was found to be a nuisance in a residential location, being detrimental and injurious to health, safety and property; the repetition of such use as illustrated in the several cases was uniformly followed by similar effects, and became generally known and regarded in such localities as nuisances, therefore we held such uses to be a nuisance per se. Attention is directed to Penna. Co. v. Sun Co., 290 Pa. 404, 410, 411, for the definition approved in this State and our treatment of nuisances of the kind under consideration.

Later, the "nuisance per se" rule was held not to apply to buildings devoted to storage purposes in business sections of cities of the larger size, or those sections in such cities largely commercial yet partly residential (Hollinger's Case), and still later, to residential districts composed of apartments of all kinds, hotels, clubs, schools and other buildings as limited and described in Ladner v. Siegel (No. 3), 296 Pa. 579. Nevertheless, in other residential districts we have continued to hold that the rule does apply.

The expression that a public garage is a "nuisance per se in a residential district" was evolved from common law principles following the practical effect of such uses, which are prejudicial to the interests of the community and the *rights of individuals* (the essence of equity jurisprudence, section 13, Act of 1836, P. L. 789), and injurious to health, safety and property,—the groundwork of nuisances. See Sparhawk v. Union Pass. Ry. Co., 54 Pa. 401, 421; Cumberland Valley R. R. Co.'s App., 62 Pa. 218; Rhymer v. Fretz, 206 Pa. 230; Penna. Lead Co.'s App., 96 Pa. 116, 123. Whether the courts may

determine a given act a nuisance, or whether, within certain uniform conditions, they may hold it a nuisance per se, depends on the evidence showing the necessary relation between the acts or repeated acts and the basic principles which underlie nuisances. We have not hesitated to apply the "per se" rule when facts warranted it (see Penna. Co. v. Sun Co., supra), and our right to do so is clearly within the equity powers of our courts.

It is urged that in holding that a business, lawful in itself, may become a nuisance per se, we changed the common law, and that the legislature has the sole power to do this. We are not able to follow appellant's argument. The function of determining whether a rule of the common law exists, and what it is, lies solely with the court, as does also the question whether given conditions offend that law. Here is a contest between the right of peaceful enjoyment of property and the employment of other property in lawful acts which, nevertheless, injure the right of enjoyment. The law uniformly has attributed to the enjoyment right a higher status than the injuring-use right, so much so that we have held that the latter may, if it damages property or health, become a nuisance, and its repetition with like effect a nuisance per se; human rights are pitted against material ones. Courts, in so determining, follow the common law which is based on principles and rules of action best adapted for the peace and security of persons and property. But the individual or property right cannot be held to outweigh all considerations of society generally. The common law, therefore, is not a fixed, unyielding set of principles of a certain standard applying only as conditions warranted a century ago, but adapts itself to changing conditions as marked by the progress of public, material and social affairs. The automobile is of a late day, but, if its use is injurious to health, safety and property, it is none the less a nuisance because of its recent origin, and it may be outlawed as a nuisance per se in certain localities, if its use in those

localities is injurious to health, safety and property. When the legislature, by enactment, takes a nuisance out of common law, it is no longer controlled by the common law. If, as argued by appellant, Judge RICE had said, in Pittsburgh v. W. H. Keech Co., 21 Pa. Superior Ct. 548, 553, that the legislature alone may determine a nuisance, such statement would challenge our earnest consideration, since we regard Judge RICE as one of the ablest judges of the State; but he did not say so. He there stated that the legislature had the right to change the common law as to nuisances. He did not deny the right of the courts to adapt it to new conditions. We have discussed the subject of nuisances at some length in Penna. Co. v. Sun Co., supra.

It is urged that the garage rule is uncertain in its application, a departure from the strict meaning of a nuisance because it makes the determination of a nuisance depend on locality; and a nuisance per se is an act which is a nuisance at all times and at all places. The per se rule is not made for convenience,—though it may operate to relieve one of the parties of the necessity of proving a fact,—nor is it a departure from equitable principles. If the rule involved the application of the governing principles to variable situations of fact, either as to cause or effect, some of which might be harmless and others harmful, of course the rule, when applied, would not produce uniform results, and would be uncertain of application. While there are many kinds of garages (and we have dealt with many such different situations in different localities), in each case the uniform result of their operation in a residential district is as explained above. The contention as to uncertainty does not more than suggest that there may be border-line cases. This is inevitable and the Hollinger and Ladner (296 Pa. 579) cases are illustrations of localities of residences where the per se rule does not operate. The fact must not be overlooked that, in a residential district, a public garage unquestionably destroys property value.

The decision whether a locality is given over more to business than residence lies in the sound discretion of the court below, and, like any finding in equity, where there is evidence to support it, we will not interfere with the conclusion reached.

The definition of a nuisance per se as given by appellant relates to conditions which are bad in themselves and prohibited by law at all times and places, as for instance a house used as a bawdy-house. We know that a horse-boiling factory is a nuisance per se if a use of property is attempted for that purpose within inhabited territory, yet situated distant from any habitation it certainly would not be a nuisance. In any definition of nuisance per se, of the type now under consideration, in addition to the idea that the contemplated use is a source of damage to persons or property, locality is of primary importance and is an essential factor. When it is generally known that acts are injurious as herein discussed, it does not require experiments or a demonstration of use to determine whether the result would have an evil effect.

As to the federal question involved, we stated above the right of an owner to any use of his property unless he prevents his neighbors from enjoying the use of their property. This is an attribute of property almost as old as its use. Two property rights are predicated on it, one in the owner who is acting and the other in his neighbor whose property is affected by such use. So that, while one has a property right of use, the other, the neighbor, has a property right to enjoy his land without injury from such use. The rights are, in a sense, correlated, the one acting and the other acted upon. Neither can be destroyed or injured by judicial decree or legislative enactment. The same reason that would strike down an act of assembly regulating nuisances, as an infringement of rights guaranteed by the 14th Amendment, would, no doubt, condemn a decision of a court that would hold a particular act a nuisance, or its repe-

tition a nuisance per se: that is, that the action is arbitrary, unreasonable, or an unjust discrimination. The federal Supreme Court has said: "We cannot interfere, unless the judgment amounts to mere arbitrary or capricious exercise of power, or is in clear conflict with those fundamental 'principles which have been established in our system of jurisprudence for the protection and enforcement of private rights' ": American Express Co. v. Kentucky, 273 U. S. 269, 273. See also Corrigan v. Buckley, 271 U. S. 523; West v. Louisiana, 194 U. S. 258. From the facts repeatedly found by the court to exist and known generally to be injurious to property in certain localities, we find that the rule that a public garage is a nuisance per se in such localities is not unreasonable, arbitrary, oppressive or unjustly discriminatory, and does not violate the 14th Amendment to the federal Constitution. No decision of the Supreme Court of the United States has been pointed out where the judicial determination of a state court that an act is a nuisance has been set aside because of this amendment. We have no doubt it may be done, but if so, it will open a new type of appeals.

Equity may abate or restrain a nuisance where it affects private property: Penna. Lead Co.'s App., supra. In discussing the question as to whether this is a residential district, we had occasion, in the Hollinger Case, to go into the subject and point out the situation as it existed in cities, and referred to the Huntingdon Case decided by Judge HENDERSON, which appellant seems to have lost sight of. We said in the Hollinger Case, at page 523: "In applying the rules here stated, courts will be careful to note that in small cities and boroughs, business and residences closely interlock, and, in determining the residential character of a locality, of which that considered in Tyson et al. v. Coder, 83 Pa. Superior Ct. 116, is a type, they will be guided by the considerations so well expressed there, and preserve the home-dweller from the intrusion of business which destroys

peace, comfort and enjoyment, as well as property value. The reasons mentioned as controlling in a city are not to be found in such places."

Plaintiff resides in the City of Franklin. It is not a large city. His property lies in a block through which a railroad runs or adjoins it. The fact that a railroad adjoins, or that there is a business or manufacturing establishment in the next block or on the opposite side of the street, will not classify the land as commercial or as semicommercial (as defined in the Hollinger Case) in small cities or boroughs. In the districts here involved, a railroad or other business may be located near by, yet the territory contested for in such localities may be exclusively residential. It is a matter resting in the sound discretion of the court below, and we will not interfere unless that discretion is manifestly abused. We do not find it so in this case.

Decree affirmed at the cost of appellant.