## Thomas et al., Appellants, *v.* Dougherty et al.

Argued January 25, 1937. Before KEPHART, C. J., MAXEY, DREW, LINN, STERN and BARNES, JJ.

526

*Randolph Stauffer,* for appellants.

*Charles H. Weidner,* with him *Harold J. Ryan, Daniel C. Donoghue, Vernon L. Stover* and *Stevens & Lee,* for appellees.

OPINION BY MR. JUSTICE DREW, March 22, 1937:

Plaintiffs appeal from the dismissal of their bill in equity for an injunction restraining defendants from proceeding with the erection of a proposed gasoline filling station on the northeast corner of the intersection of Centre Avenue and Spring Street in the City of Reading. Following the hearing the chancellor awarded a permanent injunction against the contemplated construction. Exceptions were filed by defendants and argued, and while they were pending before the court in banc our opinion in *White v. Old York Road Country Club,* 322 Pa. 147, was filed. The court below felt compelled, in the light of that opinion, to sustain the exceptions and dismiss the bill; the injunction previously awarded was dissolved.

The facts are not disputed. Centre Avenue and Spring Street are two of the city's principal thoroughfares; they intersect in a district that is primarily, if not exclusively, residential: see *Burke v. Hollinger,* 296 Pa. 510, 518-19. The block in which it is proposed to erect the station is owned by the Most Reverend Dennis J. Dougherty, one of the defendants, as trustee for St. Mar-

garet's Roman Catholic Congregation, whose church and parish house occupy the property. The site of the proposed station has been leased to the Sun Oil Company, the other defendant. Immediately north of this block is the extensive Charles Evans Cemetery, which extends to and beyond the crest of the gradual rise in Centre Avenue as it runs northward. Beyond the crest of the hill the avenue descends very sharply and what business premises abut that part of the thoroughfare are not visible from the residential area on the other side of the slope. Across from the proposed station, on the northwest corner of the intersection, is the Home for Friendless Children. The building of the Historical Society occupies the southwest corner. There is a florist's shop on Centre Avenue, across from the cemetery, and a drug store several blocks south of the intersection in question. Aside from these buildings Centre Avenue, for several blocks on either side of the intersection with Spring Street, consists of attractive homes, set back from the highway, surrounded by spacious lawns and trees. The assessed valuations of these properties are very substantial and some of the houses are among the finest in the city. Plaintiffs are all property owners on Centre Avenue, and with a single exception, their respective properties come within 500 feet of the proposed station. The streets immediately east and west of Centre Avenue and immediately north and south of Spring Street contain single houses, some double houses and rows, with appurtenant garages, and occasional neighborhood stores. We have carefully reviewed the testimony, together with the accompanying photographs and charts, and the chancellor's finding that the district is a residential one is amply supported by the evidence.

We are all agreed that the present case falls within the general rule that a public gasoline filling station, while not a nuisance per se, becomes a nuisance if conducted in a residential neighborhood from the mere fact of operation: *Carney v. Penn Oil Co.*, 291 Pa. 371; *Cal-*

*vary Presbyterian Church v. Jones,* 322 Pa. 77; see *Burke v. Hollinger,* supra, 517; *Sprout v. Levinson,* 298 Pa. 400, 403; *Perrin's Appeal,* 305 Pa. 42, 50. The operation of this rule was not restricted by our decision in *White v. Old York Road Country Club,* supra. There the location of the proposed filling station was sanctioned by local zoning ordinances provided the proper authorization was secured, a permit had been issued, and there was but one objector. It further appeared that the chief value of the land lay in its use for commercial purposes, and that the neighborhood was in a transitional stage from residential to business. None of these circumstances is here present. The *White* case, as we there specifically pointed out, was a borderline case, and one in which, in the light of all the attendant circumstances, the interference of equity would not have been proper.

Equity's jurisdiction to restrain harmful and obnoxious uses of one's own property is founded upon the preservation of the rights of surrounding property owners. The facts of each particular case require separate treatment *(Pilling v. Moore,* 306 Pa. 406) and the inquiry must be addressed to the conditions then existent in the immediate neighborhood: *Calvary Presbyterian Church v. Jones,* supra; see *Mitchell v. Guaranty Corporation,* 283 Pa. 361, 365. Measured by these tests and considerations we do not doubt that the erection of a gasoline filling station on the site proposed would very materially prejudice plaintiff's property rights.

It should not be forgotten that in *Long v. Firestone Tire & Rubber Company,* 303 Pa. 208, we enjoined a proposed "automobile filling, sales and service station" sought to be erected on a corner just four blocks from the contemplated building in the instant case and in the same residential section.

The decree of the court below is reversed and the record is remitted to the end that a permanent injunction may be entered; costs to be paid by defendants.