## Whitemarsh Township v. Cummings

*Elmer L. Menges*, for plaintiff.

*Roger B. Reynolds*, for defendant.

KNIGHT, P. J., March 7, 1956.—The pleadings: Complaint, answer and new matter, replication, final hearing.

### Questions Involved

Is defendant maintaining a public nuisance on his premises?

Do the bees kept by defendant constitute a nuisance which may be enjoined?

### Findings of Fact

1. Plaintiff is a township of the second class in Montgomery County.

2. Defendant resides at the corner of 14th Avenue and Hallowell Street in Whitemarsh Township, being premises 145 East 14th Avenue. The premises consist of a lot approximately 50 x 153 feet, on which is erected a dwelling house and a frame barn or garage; on the lot are several trees 20 to 30 feet high and some bushes and shrubs.

3. Defendant keeps bees. During the last two years the colonies or hives of bees kept by him have averaged from 8 to 15. Each colony or hive may have from 3,000 to 30,000 bees.

4. In the general area of defendant's premises there are 105 houses. Seven residents of this area appeared at the hearing and testified. One other resident appeared, but his testimony was hearsay·and not considered.

5. In gathering honey, bees will roam from two miles to five miles from the hive. They remain in the hive during the cold of winter months and on rainy days.

6. Within a five mile radius of defendant's premises there are 381 colonies or hives of bees, and within a five mile radius in Whitemarsh Township there are 108 colonies or hives of bees. Within a radius of three miles from defendant's premises there are 211 hives. Two miles away there is a beekeeper who has 57 hives.

7. Bees do not deposit fecal matter in the hive, so if they are confined by bad weather in the hive for a period of weeks, their bodies become heavy with fecal matter. Then on the first warm day they sally forth and dispose of the fecal matter, usually within 50 to 200 feet of the hive.

8. Seven neighbors who live within a radius of 500 feet of defendant's premises, when hanging out their wash, have found brown spots on the white garments and sheets about one-eighth of an inch in diameter. These spots are noticed more in the early spring and many of them were made by bees which either drop the fecal matter in flight or deposit it on the wash.

9. Bees are attracted by water and several children in the neighborhood have been stung by bees which were attracted by the little backyard swimming pools or stung by bees in the grass.

10. Bees can only discharge fecal matter while in flight and this fecal matter, during the first flight after confinement in the hive for several days or weeks, is discharged usually within a radius of 200 feet from the hive.

### Discussion

We are met at the outset of this case with the problem of whether the township is a proper party and that depends on whether we are dealing here with an alleged public or private nuisance.

"The difference between a public and a private nuisance does not depend upon the nature of the thing done but upon the question whether it affects the general public or merely some private individual or individuals": Phillips v. Donaldson 269 Pa. 244 (1920).

Plaintiff here bases its action on the alleged existence of a public nuisance. This is shown by the fact that the township is plaintiff and a public nuisance is specifically averred in paragraph 14 of the complaint.

Assuming that defendant is maintaining a nuisance, is it a public nuisance?

There are 105 houses in the area in which defendant's hives are located, yet only seven householders have come forward to officially complain. There is not a scintilla of evidence that the travelling public was affected or that the people of Whitemarsh Township generally or any appreciable segment thereof were annoyed.

Plaintiff alleges that defendant is maintaining a public nuisance, but has failed to prove that allegation and for this reason alone the complaint should be dismissed.

Are the bees of defendant such a nuisance as should be restrained by injunction?

The seven competent witnesses who appeared and testified had two complaints about the bees: (1) That they dropped or deposited fecal matter on their wash while on the line drying and; (2) that during the summer months some of their children had been stung by bees.

There was about the same exaggeration and over-statement usually present in nuisance cases. Allowing for this there can be no doubt that the neighbors' white materials, while drying on the wash line were spotted by the droppings of bees. How serious was this annoyance and how often did it occur?

The chancellor was impressed with the testimony of the experts called by defendant, all men who had long experience with bees and who had made a study of their lives and habits. These men all testified that bees can only dispose of fecal matter in flight and that it is only on the first flight in the spring that the fecal matter is of such volume as to leave a perceptible spot on white material.

We cannot take the stings very seriously. The writer of this adjudication was raised in the country and the stings of insects were frequent occurrences and we paid little attention to them; a dab of wet mud on the sting and we were on our way. Children are some-times bitten by dogs and cats, but this constitutes no reason for barring all dogs and cats from a neighbor-hood.

There is also the problem of identifying the bees. Not one of the witnesses for plaintiff would undertake to say that the culprits were defendant's bees. The testimony of the experts was that bees range from two to five miles in search of honey, and there are over 100 hives within two miles of defendant's prem-ises.

So far as the droppings are concerned, there is a strong inference that they came from defendant's bees

for the experts testified that a bee will not fly more than 200 feet before discharging its droppings.

The stings may or may not have come from defendant's bees, but there is no evidence upon which a finding could be made that the stings complained of were caused by defendant's bees.

The keeping of bees in a residential neighborhood is not a nuisance per se and the strong arm of the chancellor should not be exerted to eliminate a legitimate business or occupation unless compelling reasons require it, that is, that the injury caused is real and substantial: Penna. Co., etc. v. Sun Co., 290 Pa. 404; Molony v. Pounds, 361 Pa. 498.

After reviewing this entire record and making due allowance for the rather obvious overstatements of some of the witnesses for plaintiff, we have come to the conclusion that, if defendant keeps the number of his hives at not more than 10, the annoyance to the neighbors and the times it occurs is not so unreasonable or so substantial as to warrant injunctive relief.

## Conclusions of Law

The nuisance, if a nuisance at all, is a private nuisance and not a public nuisance.

The keeping of bees in a residential neighborhood is not a nuisance per se.

So long as defendant maintains not more than 10 hives of bees on his premises the annoyance to the neighbors is not so substantial or unreasonable as to warrant injunctive relief.

The complaint should be dismissed.

Plaintiff should pay the costs.

## Decree Nisi

And now, March 7, 1956, it is ordered, adjudged and decreed:

That the prothonotary mark these findings of fact and conclusions of law filed, to become a part of the

562

record of this case, and enter the following decree nisi:

The complaint is dismissed.

Plaintiff to pay the costs.

Notice to be given by the prothonotary as required by the rules of equity practice, that unless exceptions shall be filed within 20 days from this date, the decree nisi will become the final decree, as of course.